IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DOUGLAS KELLY :
:
v. :
: Civil Action No. CCB-09-2396
TOWN OF OCEAN CITY, MARYLAND :
and UNITED STATES COAST GUARD :

...o0o...

# MEMORANDUM

Douglas Kelly has sued the Town of Ocean City, Maryland and the United States Coast Guard for damage caused when his fishing vessel run aground and collided with a fishing pier in Ocean City, Maryland on September 11, 2006. He has alleged negligence on the part of both defendants. The defendants have each moved to dismiss the complaint. The issues in this case have been fully briefed and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2010).

The grounding of the vessel and the consequent damages are very unfortunate. Kelly's claims against the Coast Guard, however, were filed outside the applicable limitations period, and therefore must be dismissed. His claims against Ocean City also must be dismissed because Kelly has not alleged that he complied with the notice-of-claim requirement of Maryland's Local Government Tort Claims Act.

# BACKGROUND

On September 11, 2006, the fishing vessel Mighty Duck ran aground just north of the Ocean City fishing pier in Ocean City, Maryland. (Compl. ¶4; State of Maryland Watercraft Accident Report, Pl.'s Opp'n, Ex. 4 ("Watercraft Accident Report") at 4.) The United States Coast Guard was notified of the grounding at approximately 2:40 a.m. and dispatched personnel to the scene. (Compl. ¶5; Watercraft Accident Report at 4.) Allegedly, the Ocean City Police

1

Department, an officer of which was also present at the scene, "assured the [Coast Guard] that they would keep an eye on the vessel as they patrolled the boardwalk through the early morning hours." (Compl. ¶8; Watercraft Accident Report at 4.) The Maryland Natural Resources Police were notified at approximately 10:00 a.m. (Watercraft Accident Report at 4.) The captain of the vessel, Captain Dillon, and the vessel owner, Douglas Kelly, contacted a commercial tow boat company for assistance, but the company could not tow the vessel due to the severity of the rough seas. (Compl. ¶9; Watercraft Accident Report at 4.) The vessel subsequently drifted into the Ocean City fishing pier's pilings causing damage to several pilings. (Compl. ¶¶12-13; Watercraft Accident Report at 4.) To avoid further damage to the pier, the Ocean City Public Works and Fire Department, using construction equipment, pulled the vessel away from the pier and disposed of the vessel ashore. (Compl. ¶¶ 14, 16; Watercraft Accident Report at 6.) Kelly alleges that the value of the vessel and gear that was lost was approximately $161,000, the estimated cost of repairing the pier was approximately $25,000, and the estimated cost to the Ocean City Public Works and Fire Departments of rendering aid was $13,000. (Compl. ¶¶17-19.)

Plaintiff filed this action against the United States Coast Guard and the town of Ocean City, Maryland seeking $250,000 in damages.[1] He alleges the Coast Guard and the town assumed duties to him, and were negligent in carrying out those duties. He alleges that when the Ocean City police officer told a member of the Coast Guard that he would "keep an eye" on the vessel, the town of Ocean City assumed a duty to Kelly to oversee and salvage the grounded vessel, and the town breached that duty by "failing to secure the vessel before it caused damage" to the pier. (*Id*. ¶¶21-25.) He alleges that the Coast Guard owed him a duty, which it breached,

---

[1] When Kelly originally filed the complaint in September 2009, he was represented by counsel. On June 22, 2010, this court construed a letter Kelly submitted on June 17, 2010, as a motion to proceed *pro se*, and granted the motion.

2

because it was "the first agency to respond to the scene of the grounding," and it "accepted the rescue and salvage mission." (*Id*. ¶¶27-30.) Kelly alleges that by, *inter alia*, failing to "assist with the salvage or simple towage of the vessel" (*id.* ¶31), by "compelling Captain Dillon to abandon the vessel" (*id.* ¶35), by "waiting from 2:40 a.m. until approximately 10:00 a.m. to alert the State of Maryland Department of Natural Resources Police of the grounding of the vessel" (*id.* ¶39), and by "leaving the salvage and/or simple towage operation in the hands of the Town of Ocean City Department of Public Works and Fire Department, when it was clear these agencies were not adequately equipped to render timely and effective assistance" (*id.* ¶43), the Coast Guard failed to act "in accordance with the standards of acceptable seamanship," and therefore should be held responsible for the damage caused to the vessel and pier.

## ANALYSIS

**I.    Claims against the U.S. Coast Guard**

As a sovereign, the United States "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Testan*, 424 U.S. 392, 399 (1976) (internal quotations omitted). Where the conditions under which the government has agreed to waive its sovereign immunity have not been met, federal subject matter jurisdiction does not exist. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). There are two waivers of sovereign immunity under which Kelly may have intended to sue: the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 1402, 2401(b), 2671 *et seq*., and the Suits in Admiralty Act (SAA), 46 U.S.C. § 30901 *et seq*.[2] The statutes are mutually exclusive, because where a tort claim falls under admiralty jurisdiction, FTCA claims are barred. 28 U.S.C. § 2680(d). The question of which statute applies turns on whether Kelly's claims arise

---

[2] There is another statute that authorizes tort claims in admiralty against the United States, the Public Vessels Act (PVA), 46 U.S.C. §§ 31101-31102. The PVA, however, applies only where a public vessel of the United States is involved, and therefore does not apply here.

3

under admiralty jurisdiction. *See* 28 U.S.C. § 1333(1). This question need not be decided, however, because under either the SAA or the FTCA, his claims are barred.

Under the SAA, a civil action "must be brought within 2 years after the cause of action arose." 46 U.S.C. §30905. A cause of action under the SAA arises at the time of injury. *McMahon v. United States*, 342 U.S. 25, 27 (1951). Here, the injury occurred on the date of the grounding, September 11, 2006. Kelly did not file suit until three years later, on September 11, 2009. Therefore, to the extent Kelly intended to sue under the SAA, those claims are barred by the statute of limitations.

To the extent Kelly's claims do not arise under admiralty jurisdiction, the claims are barred by the statute of limitations under the FTCA. A tort claim against the federal government under the FTCA is "forever barred unless it is presented in writing to the appropriate Federal Agency within two years after such claim accrues." 28 U.S.C. § 2401(b). Kelly has not alleged that he brought any claim before any federal agency within two years of the accident. Therefore, any FTCA claim arising out of the September 11, 2006, accident is barred by § 2401(b).

For these reasons, Kelly's claims against the U.S. Coast Guard will be dismissed.

**II.     Claims against Ocean City**

Kelly has also sued the Town of Ocean City for negligence. Under Maryland law, "[a] local governmental entity is liable for its torts if the tortious conduct occurs while the entity is acting in a private or proprietary capacity, but, unless its immunity is legislatively waived, it is immune from liability for tortious conduct committed while the entity is acting in a governmental capacity." *DiPino v. Davis*, 729 A.2d 354, 369-70 (Md. 1999). The Maryland Local Government Tort Claims Act ("LGTCA") provides that "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the

claim required by this section is given within 180 days after the injury." Md. Code. Ann., Cts. & Jud. Proc. § 5-304(b)(1). The LGTCA does not waive local government immunity, but rather "affords a remedy to those injured by acts of local government officers and employees, while ensuring that the financial burden of compensation is carried by the local government ultimately responsible for the public officials' acts." *Rios v. Montgomery County*, 872 A.2d 1, 13 (Md. 2005).[3] To comply with the notice-of-claim requirement, "[t]he notice shall be in writing and shall state the time, place, and cause of the injury," Md. Code. Ann., Cts. & Jud. Proc. § 5-304(b)(2), must be delivered "in person or by certified mail, return receipt requested, bearing a postmark from the United States Postal Service," *id.* § 5-304(c)(1), and must be "given to the corporate authorities of the defendant local government." *Id.* § 5-304(c)(4).

The LGTCA notice-of-claim requirement is not a statute of limitations, but rather "a condition precedent to maintaining an action against a local government or its employees to the extent otherwise not entitled to immunity under the LGTCA." *Rios*, 872 A.2d at 14. As a "condition precedent," rather than a "statute of limitations," the notice requirement "operates as a limitation of the liability itself as created, and not of the remedy alone," *id.* (citation omitted), and should be alleged as a substantive element in the complaint in order to state a claim under Maryland law. *Curtis v. Pracht*, 202 F. Supp. 2d 406, 414 (D. Md. 2002); *see also Hargrove v. Mayor and City Council of Baltimore*, 807 A.2d 149, 152 (2002). The purpose of the

---

[3] Section 5-302(a) of the LGTCA requires "[e]ach local government [to] provide for its employees a legal defense in any action that alleges damages resulting from tortious acts or omissions committed by an employee within the scope of employment with the local government." Section 5-303(b) provides that, other than for punitive damages, "a local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government." "Nowhere in the Act, however, is there a waiver of immunity so that the governmental entity is subject to being made a party to an action based upon its employee's or agent's tortious acts." *Nam v. Montgomery County*, 732 A.2d 356, 362 (Md. Ct. Spec. App. 1999); *see also Williams v. Prince George's County*, 685 A.2d 884, 898 (Md. Ct. Spec. App. 1996) ("[T]he LGTCA, by its own terms, contains no specific waiver of governmental immunity when a governmental entity is sued in its own capacity.") (quoting *Khawaja v. Mayor and City of Rockville*, 598 A.2d 489, 494 (Md. Ct. Spec. App. 1991).

requirement is "to apprise a local government of its possible liability at a time when it could conduct its own investigation, *i.e.*, while the evidence was still fresh and the recollection of the witnesses was undiminished by time, sufficient to ascertain the character and extent of the injury and its responsibility in connection with it." *Rios*, 872 A.2d at 14 (quotation marks and citation omitted). Although the requirement may be met by "substantial compliance," this still "requires some effort to provide the requisite notice and, in fact, it must be provided, albeit not in strict compliance with the statutory provision." *Faulk v. Ewing*, 808 A.2d 1262, 1272 (2002).

A plaintiff is excused from the notice requirement, however, where the plaintiff can show "good cause" for why notice was not provided within 180 days of the injury, so long as the defendant cannot show that it was prejudiced by its lack of notice. Md. Code. Ann., Cts. & Jud. Proc. § 5-304(d) ("[U]nless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given.") Good cause exists when a claimant prosecutes a claim "with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." *Heron v. Strader*, 761 A.2d 56, 63 (Md. 2000) (citation omitted). The question whether good cause for waiver exists is within the discretion of the trial judge. *Id*. Courts consider various factors, including the following:

> [1] excusable neglect or mistake (generally determined in reference to a reasonably prudent person standard), [2] serious physical or mental injury and/or location out-of-state, [3] the inability to retain counsel in cases involving complex litigation, . . . [4] ignorance of the statutory notice requirement[,][4] or (5) misleading representations made by representative of the local government.

*Wilbon v. Hunsicker*, 913 A.2d 678, 693 (Md. Ct. Spec. App. 2006) (footnote and citation omitted); *see Rios*, 872 A.2d at 22-24 (affirming finding that plaintiff's limited English

---

[4] As the Court of Special Appeals has noted, "the question remains open as to whether ignorance of the statutory notice requirement constitutes good cause." *White v. Prince George's County*, 877 A.2d 1129, 1144 (Md. Ct. Spec. App. 2005).

6

proficiency and immigrant status did not constitute good cause); *Heron*, 761 A.2d at 63 (affirming finding that the pendency of a criminal case during the 180-day period did not constitute good cause); *White v. Prince George's County*, 877 A.2d 1129, 1144-45 (Md. Ct. Spec. App. 2005) (affirming finding that, even if police department internal affairs officer told the claimant not to take action, good cause did not exist, because such advice would only have excused a delay of "months, but not years"); *see also Wilbon*, 913 A.2d at 695-96 (reversing finding of good cause where the plaintiff "filed a complaint of alleged police misconduct with [the police department civilian review board] within four days of [decedent's] death, but failed to give notice to the City Solicitor of a tort claim arising out of that misconduct" until four to six weeks after the expiration of the 180-day period); *cf. Prince George's County Maryland v. Longtin*, 988 A.2d 20, 36 (Md. Ct. Spec. App. 2010) (affirming finding of good cause where arrestee was not released from jail until two months after period had ended and he did not learn that defendants had withheld exculpatory evidence until after his release).

The Town of Ocean City is a "local government" for purposes of the LGTCA. *See* Md. Code. Ann., Cts. & Jud. Proc. § 5-301 (defining "local government" as, *inter alia*, a "municipal corporation established or operating under Article 23A of the Code"); Town of Ocean City Charter, Ocean City, Maryland Code of Ordinance Part I. Here, Kelly's alleged "injury" occurred on September 11, 2006, the date of the accident. *See Heron*, 761 A.2d at 59 (defining the date of "injury" under the LGTCA as the date "when his causes of action arose, i.e., when the legally operative facts permitting the filing of his claims came into existence"). He has not alleged that he provided any notice to the municipality within 180 days of the accident. Unless he can show "good cause" for his failure to provide notice, Kelly must have provided notice of

his claim to the town within 180 days of the accident in order to be entitled to sue Ocean City for damages. *See Rios*, 872 A.2d at 14.

On the question of "good cause," the only explanation Kelly provides for his failure to provide notice within 180 days was the following, provided in his opposition brief filed on August 20, 2010:

> I needed to examine all reports related to the incident of September 11, 2006 and speak with Captain Dillion, which I have not done as of yet. I have received reports from the Department of Natural Resources Marine Police and OCPD in early 2008 and the USCG SAR Report in late 2007. After thorough examination of all reports in reference to the incident on September 11, 2006 and witness interviews, I then proceeded to file a Civil Tort Claim against the defendants for NEGLIGENCE in this case.

(Pl.'s Opp'n at 2.) In essence, Kelly argues that he should be excused from the notice-of-claim requirement because within the 180 days he had not spoken with the captain of the vessel and had not received incident reports from the Coast Guard, the Maryland Natural Resources Police, or the local police department.

These facts, even if true, do not constitute good cause for failure to file a notice of claim. Kelly concedes that he was informed on September 11, 2006, the same day as the accident, that the boat had run aground, and that he was present at the scene within ten hours of the grounding. (Pl.'s Opp'n at 2.) He does not allege that he was prevented from filing a notice of claim by physical or mental injury, misleading representations made by representative of the local government, or inability to retain counsel. Nor does he claim that he was unaware of the notice requirement. Rather, he argues that he should be excused for never having filed notice of his claim because he did not receive reports from the Department of Natural Resources Marine Police and OCPD until "early 2008." (*Id.*) This argument, however, must fail. He knew within a day of the accident that his vessel was a total loss, and that municipal personnel had been involved in the salvage effort. While he may not have known all of the details that he would,

8

purportedly, later learn upon reading the reports, the fact that he did not receive the reports within 180 days of the accident did not prevent him from filing notice of a claim. Moreover, Kelly does not allege that he filed a notice of claim even after receiving those reports. Rather, he waited a full three years after the accident and then proceeded to file the instant lawsuit. For these reasons, the court finds that he did not prosecute his claim against Ocean City with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances. Therefore, he has not shown "good cause" for his failure to satisfy the notice-of-claim requirement. Accordingly, his claims against the Town of Ocean City will be dismissed.[5]

## **CONCLUSION**

For the foregoing reasons, the defendants' motions to dismiss will be granted. A separate order follows.

November 16, 2010  /s/
Date  Catherine C. Blake
  United States District Judge

---

[5] As noted earlier, local governments in Maryland have governmental immunity in tort actions when the allegedly tortious activity is "governmental" in nature, but are not entitled to that immunity for activity that is "'private' or 'corporate' or 'proprietary.'" *Rios*, 872 A.2d at 12 (citing *Housing Authority v. Bennett*, 754 A.2d 367, 368 (Md. 2000)). The court does not reach the question whether Ocean City's actions were "governmental" or "'private' or 'corporate' or 'proprietary'" because, in any event, Kelly's claims are barred by his failure to comply with the notice-of-claim requirement of the LGTCA.